UNITED STATES DISTRICT COURT
for the
Western District of North Carolina ▼

Charlotte Division

FILED
CHARLOTTE, NC

MAY 15 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

Virgilia Rodriguez )
)
)
)
*Plaintiff(s)* )
*(Write the full name of each plaintiff who is filing this complaint.* )
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
-v- )
)
Wipro Limited )
)
)
*Defendant(s)* )
*(Write the full name of each defendant who is being sued. If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names.)* )

Case No. 3:25-CV-331-KDB
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Virgilia Rodriguez |
   | Street Address | 11031 Moonbug Ct. #3516 |
   | City and County | Charlotte - Mecklenburg |
   | State and Zip Code | North Carolina - 28278 |
   | Telephone Number | 305-985-0030 |
   | E-mail Address | gil@impacten.com |

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
- Name: Wipro Limited
- Job or Title (if known):
- Street Address: 2 Tower Center Blvd.
- City and County: East Brunswick
- State and Zip Code: New Jersey - 08816
- Telephone Number: 732-509-1500
- E-mail Address (if known):

Defendant No. 2
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 3
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 4
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question     [✔] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

5 U.S. Code § 702 - Right of review
5 U.S. Code § 704 - Actions reviewable
18 U.S.C. § 1514A (c)
Public Law 107-204 - Sarbanes-Oxley Act of 2002

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

    The plaintiff, *(name)* Virgilia Rodriguez, is a citizen of the State of *(name)* North Carolina.

    b. If the plaintiff is a corporation

    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

      b.      If the defendant is a corporation

The defendant, *(name)* Wipro Limited , is incorporated under the laws of the State of *(name)* New Jersey , and has its principal place of business in the State of *(name)* New Jersey .

Or is incorporated under the laws of *(foreign nation)* India ,

and has its principal place of business in *(name)* New Jersey .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

$1,950,000
- Defendant did not provide Plaintiff severance
- Plaintiff has suffered significant career disruption
- Plaintiff has suffered significant medical and mental heath issues as a direct result of Defendant's actions

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Please see attached detailed Complaint.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff see attached Complaint detailing requesting Declaratory Relief. Plaintiff is willing to work with Defendant in a reasonable manner to resolve this action.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 05/15/2025

Signature of Plaintiff: *[signed]*

Printed Name of Plaintiff: Virgilia Rodriguez

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION

| | |
|---|---|
| VIRGILIA RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>WIPRO LIMITED,<br><br>Defendant. | Civil Action No.<br><br><br>**COMPLAINT** |

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, Virgilia Rodriguez ("Plaintiff") hereby files this action under Federal Rule of Civil Procedure 41 (a)(2).

2. Plaintiff is a former employee of Wipro Limited ("Defendant"). Plaintiff hereby petitions this Court to address adverse actions taken against her connected to 5 U.S. Code § 702 - Right of review, 5 U.S. Code § 704 - Actions Reviewable, 18 U.S.C. § 1514A (c) and Public Law 107-204 - *Sarbanes-Oxley Act* of 2002 ("SOX").

3. On June 6, 2022, Plaintiff was wrongfully terminated by Wipro Limited's supervisory personnel after Plaintiff reported a suspicious entity known as "Dauphine Equity Ventures," wherein a Wipro Limited partner was listed as a "Senior Vice President." Plaintiff followed internal company policy as she had been previously trained to report suspicious activities, per Wipro Limited onboarding training curriculum.

4. During the termination, Defendant's supervisory personnel, Scott Sheinbaum advised Plaintiff she would be receiving a severance. Mr. Sheinbaum did not specify the amount nor when Plaintiff should expect to receive it. Plaintiff never received a separation letter from Defendant,

Wipro Limited. Plaintiff can promptly supply evidence of Mr. Sheinbaum's statement upon request.

5. On June 9, 2022, three days after Plaintiff's termination, Wipro Limited filed a report with the Securities Exchange Commission ("SEC"), stating it had complied with "whistleblower mechanisms." Please see attached excerpt of the report as Exhibit A.

6. Subsequently, on Friday June 10, 2022, four days after Plaintiff's wrongful termination, Plaintiff was contacted by Wipro CEO's Chief of Staff, Louise Chalopin, based in Paris France. During this conversation, Plaintiff communicated her wrongful termination to Ms. Chalopin, as Plaintiff had attempted to contact Wipro CEO, Thierry Delaporte on June 5, 2022. Plaintiff did not understand the purpose of Ms. Chalopin's attempts at contact with Plaintiff. Please see attached evidence of communications from Ms. Chalopin as Exhibit B.

7. On November 21, 2022, Plaintiff proceeded to file formal Complaints with the Department of Labor / Occupational Safety and Health Administration ("OSHA") and the SEC on November 22, 2022 and once again Sunday, January 29, 2023. Plaintiff received a disposition from the Regional Supervisory Investigator of the Whistleblower Protection Program / OSHA within less than 24 hours stating they were not able to assist. The SEC never contacted Plaintiff to address her filed reports. Prior to filing these reports, Plaintiff had attempted to engage Defendant in a months long conversation in an attempt at a private resolution. Defendant, through its counsel mostly evaded communication attempts and several months later supplied a baseless letter to Plaintiff's counsel accusing Plaintiff of several false statements without supplying anything supporting its statements. Please attached evidence of these filings as composite Exhibit C.

## FACTUAL BACKGROUND

8. On January 2022, Plaintiff was assigned to work on the same account as David Schwab, a Limited partner. As months progressed, Plaintiff became concerned over Mr. Schwab's absenteeism from the client engagement they were mutually assigned to produce deliverables. Mr. Schwab was assigned to work with Plaintiff a total of 32 hours per month, however, Mr. Schwab limited himself to appearing on a weekly meeting with the client (1hr per week), leaving Plaintiff to absorb the remaining 28 hours. The client was also located in the West coast which forced Plaintiff to work later hours in the East coast and Mr. Schwab had adopted a habit of asking Plaintiff to do "evening tasks." By March 2022, after repeatedly being placed on client engagements with absentee supervisors, Plaintiff sought healthcare treatment for an acute anxiety disorder. By then, Plaintiff was asked to still log on to work while on rare Paid Time Off and even official national holidays.

9. Mr. Schwab had made numerous statements about his involvement with Dauphine totally contradicting the procedural treatment Plaintiff received upon hire by Wipro Limited. Plaintiff had to prove to Wipro Limited personnel her former LLC no longer existed through a series of documents inquiries. However, Mr. Schwab was somehow allowed to be in officer in Dauphine while simultaneously being employed by Wipro Limited. Plaintiff also noticed that Mr. Schwab had just filed renewal paperwork for Dauphine on May 12, 2022. Mr. Schwab had sporadic attendance at client meetings and announced he "would not bill hours" to the same client because he acknowledged his lack of engagement. Please see attached as composite Exhibit D.

10. Plaintiff's various communications to Wipro Limited supervisory personnel took place on May 13, 16 and 18, 2022 to the following individuals: Scott Scheinbaum, Michael

Willow, Human Resources ("HR") Manager Brittney Cammack and Vice President of Talent & Change, John Arnold Smith. Plaintiff can supply evidence of these communications upon request. At this time, Plaintiff had no history of disciplinary infractions and never even had interaction with HR, other than recently reporting Dauphine.

10. During the June 6, 2022 termination meeting, Plaintiff proceeded to explicitly state that the Company clearly was terminating her for engaging in protected conduct, a statement which no one present at the termination meeting refuted. Mr. Sheinbaum who spoke for a significant portion of time, ironically praised Plaintiff's performance throughout her employment, admitted that Plaintiff had been "overutilized" by Mr. Schwab and otherwise treated poorly, however asserted that "we will get you the most amount of money possible." Throughout Plaintiff's employment with Wipro Limited, supervisors connected to Plaintiff had a marked pattern of showing no boundaries towards Plaintiff as far as her time off, or over-utilization, which Mr. Sheinbaum verbally acknowledged during Plaintiff's termination. Plaintiff is able to supply a transcript and audio recording this meeting upon request.

11. During Plaintiff's termination meeting, Plaintiff stated that she had reported Dauphine due to Wipro Limited being a publicly traded corporation and explicitly stated "shareholder" concerns.

12. Mr. Sheinbaum's statements during Plaintiff's termination on June 6, 2022, contradicts the Company Hall of Fame award Plaintiff received (just weeks prior to reporting Dauphine on May 18, 2022) for exemplifying the five (5) Wipro Habits (received on April 6, 2022). During the termination meeting on June 6, 2022, Plaintiff repeatedly asked for evidence of the alleged violations and was never provided with anything supporting the allegations. See attached evidence of award of Exhibit E.

## PLAINTIFF'S CLAIMS

13. Plaintiff here by asserts that Defendant, Wipro Limited violated SOX provisions and protections afforded to Plaintiff, who engaged in protected activity by expressly disclosing her concerns and the existence of Dauphine to Wipro Limited supervisory personnel in person and in writing. Wipro Limited discriminated and retaliated against Plaintiff based upon her report of David Schwab's illicit corporation to her former supervisors: Michael Willow and Scott Sheinbaum and subsequently, John Arnold Smith, Wipro Limited Vice President of Talent and Change and HR representative Brittany Cammack. Plaintiff was promptly terminated within less than a month of reporting Dauphine, despite ironically receiving several performance praises including a Hall of Fame award just weeks prior to reporting Dauphine. Prior to an abrupt termination over reporting Dauphine, Plaintiff had consistently received praise for her performance and weeks prior even achieved a Hall of Fame global award exemplifying *"The 5 Wipro Habits"*: Being Responsive, Being Respectful, Always Communicating, Demonstrating Stewardship and Building Trust. Please see attached as Exhibit E.

14. Plaintiff asserts her rights to 5 U.S. Code § 702 - Right of review, 5 U.S. Code § 704 - Actions Reviewable, as Plaintiff timely complied with the proper filings with the Department of Labor / OSHA and SEC. In addition, Plaintiff asserts her rights under 18 U.S.C. § 1514A (c) and Public Law 107-204 - *Sarbanes-Oxley Act* of 2002 ("SOX") as she was retaliated against by Defendant as a direct result of Plaintiff's finding and communication of a suspicious entity operated by an active employee of Defendant, a publicly traded corporation.

15. Plaintiff respectfully raises that *Stone* established that SOX retaliation claims are initially brought before the Department of Labor or in District Court. SOX provides a right to *De Novo* review in District Court after a complaint has been presented to the Department of Labor.

*De novo* review essentially establishes that Plaintiff, Ms. Rodriguez as a SOX whistleblower has an unwavering right to start afresh in District Court, and the presiding judge should not defer to OSHA's findings. *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239 (4th Cir. 2009).

16. Plaintiff hereby asserts her right to judicial review and subsequently address her SOX claim in accordance and uniformity with the current and latest administrative relief standards and procedures set forth within three U.S. Supreme Court decisions: *Axon Enterprise, Inc.* (2023) *v. Federal Trade Commission, Loper Bright Enterprises v. Raimondo* (2024), and *Securities Exchange Commission v. Jarkesy* (2024). Furthermore, in connection with SOX, Defendant, Wipro Limited must prove it would have otherwise terminated Plaintiff, per *Murray v. UBS Securities* (2024). In these aforementioned opinions, the Supreme Court asserted the relevant party's right to Judicial Review after engaging in the administrative review process as complied by Plaintiff in the aforementioned 2022/2023 Department of Labor / OSHA and SEC filings included as Exhibit C.

17. A request for reconsideration can succeed when it seeks a change in the district court's ruling "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence; or (3) to correct a clear error of law or prevent manifest injustice." *United States v. Russell*, 729 F. Supp. 3d 584, (E.D. Va. 2024).

**SUPREME COURT DECISIONS ASSERTING RIGHTS TO JUDICIAL REVIEWS**

18. In *Axon Enterprise, Inc. v. FTC*, the Supreme Court held that respondents in federal administrative proceedings can assert constitutional challenges to such administrative processes in federal court prior to exhausting all avenues within the administrative tribunal. *Axon*, the subject of a Federal Trade Commission ("FTC") enforcement action adjudicated

within an administrative tribunal, filed a separate constitutional challenge to the tenure protections of the FTC's Administrative Law Judges. The FTC Act instructs parties objecting to administrative proceedings to first make their claims within the Commission itself and then appeal, if needed, to a federal court of appeals; however, *Axon* circumvented this statutory review scheme and asserted its constitutional claim directly in federal district court. The Court, in a unanimous opinion by Justice Kagan, first confirmed that the FTC Act's statutory review scheme "does not necessarily extend to every claim concerning agency action". Next, the Court applied the three *Thunder Basin* factors, which, as previously held by the Court, guide the inquiry into whether a litigant's claim is subject to a statutory review scheme. The *Thunder Basin* factors are considered in answering the fundamental question of whether a claim is "of the type Congress intended to be reviewed within [the] statutory structure". The Court in *Thunder Basin* had implied that all three factors must be satisfied in order to trigger the presumption that Congress did not intend to limit the district court's jurisdiction. The Court in *Axon* determined that all three *Thunder Basin* factors were satisfied as the claim was wholly collateral to the FTC Act's review provisions, sat beyond the FTC's expertise and was such that judicial review after the Commission ruled would be insufficient because the proceeding itself, rather than the adverse agency action, constituted the harm.

19. In *Loper Bright Enterprises v. Raimondo*, the Court overturned the *Chevron* doctrine holding that judges must exercise independent judgment when interpreting statutes. Writing for the Court in a 6-3 decision, Chief Justice Roberts reasoned that *Chevron* deference was inconsistent with the federal judiciary's constitutional duty to say what the law is. The Court went on to hold that *Chevron* was irreconcilable with the Administrative Procedure Act

("APA"), which states that courts "shall decide all relevant questions of law". Finally, the Court addressed the foundational presumption of *Chevron*—*i.e.*, that a statutory ambiguity carries an implied delegation of authority. In rejecting the presumption of an implied delegation, the Court noted that courts routinely confront statutory ambiguities without deferring to external parties and that, relatedly, the presumption is fundamentally misguided because agencies possess "no special competence in resolving statutory ambiguities".

20. In *SEC v. Jarkesy*, the Supreme Court, in a 6-3 decision, held that the SEC's use of administrative tribunals to adjudicate securities fraud claims seeking civil penalties violated the defendant's Seventh Amendment right to a jury trial. Writing for the Court, Chief Justice Roberts first established that the action implicates the Seventh Amendment because the relevant SEC antifraud provisions "replicate common law fraud". In doing so, the Court emphasized that the remedy at issue is the most important consideration when determining whether a claim, due to its common law nature, implicates the Seventh Amendment. According to the Court, the civil penalties sought in *Jarkesy* were "legal in nature", particularly as they were designed to punish or deter the defendant, rather than solely to "restore the status quo". Finally, in confirming the common law nature of the SEC's claim, the Court dismissed the Government's public rights argument, holding that Congress cannot subvert the Seventh Amendment by statutorily mandating that traditional legal claims be heard in administrative tribunals.

## *MURRAY V. UBS SECURITIES* REQUIRING MANDATORY BURDEN SHIFTING ON DEFENDANT WIPRO LIMITED

21. On February 8, 2024, the U.S. Supreme Court unanimously decided that an employee who blows the whistle under the *Sarbanes-Oxley Act* of 2002 (SOX) does not need to show that their employer had retaliatory intent to find protection under SOX. In siding with the whistleblower, the Court rejected UBS Securities, LLC's position that a finding of retaliatory intent is required for whistleblower protection under SOX, which governs corporate financial reporting and recordkeeping. On June 6, 2022, Defendant, Wipro Limited filed a report with the Securities Exchange Commission falsely asserting it had "complied with whistleblower mechanisms." An excerpt of that filing is included as Exhibit A within this filing. Defendant, Wipro Limited did not comply with whistleblower mechanisms as it wrongfully and adversely terminated Ms. Rodriguez for reporting what she reasonably considered suspicious activity in violation of *SOX.*

## DAMAGES

22. Plaintiff, as a SOX whistleblower can recover "all relief necessary to make the employee whole," which includes: a) back pay (lost wages and benefits); b) special damages (damages for impairment of reputation, personal humiliation, mental anguish and suffering, and other noneconomic harm that results from retaliation); and c) attorney's fees, and costs. 18 U.S.C. § 1514A(c). The tactics applied by Defendant have caused a significant career disruption to Plaintiff and significant medical and mental health issues who resorted to treatment with healthcare professionals. Plaintiff has battled ongoing neurological issues directly connected to wrongful actions against Plaintiff beginning throughout the course of her employment and persisting throughout activities post her wrongful termination by Defendant.

## MS. RODRIGUEZ'S PROPOSED DECLARATORY RELIEF

22. For nearly three years, Plaintiff has attempted to resolve this matter with Defendant. Accordingly, Plaintiff's preference was to work with Defendant towards amicable resolution based upon the facts and the law. For months after Plaintiff's wrongful and adverse termination, Plaintiff was unable to work due to physical and mental health issues. The mental health issues still persist to this day, and due to public filings Plaintiff has risked future career opportunities.

With the above in mind, Plaintiff believes the monetary and non-monetary terms of the settlement should be as follows:

*Monetary Terms:* lost compensation, other Compensatory Damages including for medical expenses; legal fees; substantial mental and physical anguish, lost benefits and damages = $1,950,000. Plaintiff believes Defendant should provide an initial figure to Plaintiff towards resolution along with an explanation for the decision. Plaintiff is also willing to work with Defendant to resolve this in a reasonable manner beneficial to both parties.

*Non-Monetary Terms:* Termination re-classified as voluntary resignation and positive employment reference.

## CONCLUSION

Plaintiff hereby asserts her rights under 5 U.S. Code § 702 - Right of review, 5 U.S. Code § 704 - Actions Reviewable, 18 U.S.C. § 1514A (c) and Public Law 107-204 - *Sarbanes-Oxley Act* of 2002 ("SOX").

Plaintiff properly established she satisfies the elements of protected whistleblower activity under *SOX* by notifying Defendant's supervisory personnel of suspicious activity per Wipro

Limited policy and onboarding training material. Plaintiff, a *SOX* whistleblower has demonstrated by a preponderance of the evidence that: a) she engaged in protected activity (she made a protected disclosure); b) Wipro Limited, Plaintiff's former employer knew that Plaintiff engaged in the protected activity; c) as a consequence, Plaintiff suffered an unfavorable personnel action: wrongful and adverse termination on June 6, 2022, d) the protected activity was a contributing factor in the unfavorable action. Furthermore, Plaintiff filed the proper Complaints with the corresponding administrative agencies, received no response from one and was told by another they were unable to assist. Plaintiff hereby seeks declaratory judicial relief.

Respectfully submitted, this the 15th day of May, 2025.

Virgilia Rodriguez, Pro Se
11031 Moonbug Ct., Apt. 3516, Charlotte, NC 28278
305-985-0030

### CERTIFICATE OF SERVICE

This is to certify that on May 15th, 2025, the undersigned hand-delivered the Complaint to the Clerk of Court via Hand Delivery and served *Defendant* via Process Server at their Registered Agent's place of business.